Yar R. Chaikovsky (SBN 175421)
yar.chaikovsky@whitecase.com
Philip Ou (SBN 259896)
philip.ou@whitecase.com
Bruce Yen (SBN 277920)
bruce.yen@whitecase.com
Jonathan Lamberson (SBN 239107)
lamberson@whitecase.com
Yolanda (Zhaoqi) Xu (SBN 345049)
yolanda.xu@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Attorneys for Plaintiff
BYD AMERICA LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BYD AMERICA LLC,<br><br>Plaintiff,<br><br>v.<br><br>FIRST SOLAR, INC.,<br><br>Defendant. | Case No. 3:26-cv-10766<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT, INVALIDITY AND UNENFORCEABILITY OF U.S. PAT. NO. 9,130,074**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff BYD America LLC ("Plaintiff" or "BYD") hereby alleges the following in support of its Complaint for Declaratory Judgment against Defendant First Solar, Inc. ("Defendant" or "First Solar"):

**NATURE OF THE ACTION**

1. This is an action seeking a declaratory judgment that BYD does not infringe claims 1, 2, 4 and 8 (the "asserted claims") of United States Patent No. 9,130,074 (the "'074 patent"), and that the asserted claims of the '074 patent are invalid and unenforceable under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 101, *et seq*.

2. BYD brings this action because Defendant has alleged through prior correspondences and in a parallel proceeding in the International Trade Commission ("ITC") that BYD's manufacturing and sale of N-type TOPCon solar modules, including those bearing the BYD model designation NLBK-36 (the "Accused Products"), infringes the asserted claims of the '074 patent. Defendant sought a general exclusion order in the ITC "excluding from entry into the United States of any TOPCon solar cells, and solar modules, solar panels and/or other solar products that incorporate such solar cells," including the Accused Products. BYD denies it has infringed any valid, enforceable claim of the '074 patent, and judicial intervention is necessary to resolve this dispute.

**THE PARTIES**

3. BYD is a limited liability company formed under the laws of the state of Delaware with a principal place of business at 3465 E Foothill Blvd, Floor 2, Pasadena, CA 91107.

4. On information and belief, First Solar is a corporation formed under the laws of the state of Delaware with a principal place of business at 350 West Washington St., Ste. 600, Tempe, AZ 85288. On information and belief, First Solar is registered to do business in the State of California, and operates a research and development facility at 1035 Walsh Ave, Santa Clara, CA 95050, which is located in this judicial district.

5. First Solar purports to be the owner of the '074 patent, and has alleged that BYD infringed the asserted claims of the '074 patent in the ITC investigation titled *In the Matter of*

*Certain TOPCon Solar Cells, Modules, Panels, Components Thereof, and Products Containing Same*, Investigation No. 337-TA-1494, which is currently pending but which First Solar has moved to dismiss without prejudice.

**JURISDICTION AND VENUE**

6. This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq*., and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over Defendant. Defendant operates a research and development facility at 1035 Walsh Ave, Santa Clara, CA 95050, which is located in this judicial district. On information and belief, that facility conducts research and development regarding solar technologies that First Solar has said compete with BYD solar technologies, and that were on that basis alleged as relevant to First Solar's request for injunctive relief in the ITC. First Solar also acquired the '074 patent in this district through its acquisition of TetraSun, Inc., which was previously located in Saratoga, California. On information and belief, former employees of TetraSun, including at least one named inventor listed on the '074 patent, are located in this judicial district.

8. Additionally, Defendant has purposefully directed activities relating to the '074 patent at residents in this forum. For example, according to information First Solar provided with its public complaint in the ITC, First Solar engaged in licensing communications with at least the following entities located in this judicial district:

a. CSI Solar, Inc. ("CSI"), located at 1350 Treat Blvd., Ste. 500, Walnut Creek, CA 94597;

b. JinkoSolar (U.S.) Inc. ("Jinko"), located at 595 Market St., Ste. 2200, San Francisco, CA 94105;

c. Runergy USA Trading LLC ("Runergy"), located at 6200 Stoneridge Mall Rd., Ste. 300, Pleasanton, CA 94588; and

d. Trina Solar North America ("Trina"), located at 100 Century Center, Ste. 501, San Jose, CA 95112.

9. On information and belief, First Solar also conducted testing of allegedly infringing products in this judicial district. For example, a purchase record filed by First Solar with its ITC complaint indicates that cells manufactured by both Runergy USA Trading LLC and VSUN Solar USA Inc. were shipped to Covalent Metrology, 927 Thompson Place, Sunnyvale, CA 94085, which is in this judicial district. Covalent Metrology indicates on its website that it provides testing for "optical, chemical, physical, and electrical properties of new advanced materials and devices," including "[f]or solar cell material development, electrode coating evaluation, performance evaluation, and modeling." First Solar's complaint in the ITC states that based upon this testing these panels were found to have been "manufactured using a process covered by the Asserted Patent."

10. First Solar's activities directed towards this judicial district continued after the filing of its complaint in the ITC. For example, First Solar identified each of the above-identified companies in this district as respondents in the ITC investigation, as well as:

a. JA Solar USA, Inc. ("JA Solar"), identified as having an address of 2570 North First Street, Ste. 360, San Jose, CA 95131;

b. Philadelphia Solar USA Inc. ("Philadelphia Solar"), identified as having an address of 1820 Gateway Drive, Ste. 170, San Mateo, CA 94404; and

c. VSUN Solar USA Inc. ("VSun"), identified as having an address of 909 Corporate Way, Fremont, California 94539.

11. After BYD intervened in the ITC investigation, First Solar engage with BYD's outside counsel, White & Case LLP ("White & Case"), in this judicial district, sending multiple discovery letters addressed to counsel, serving infringement contentions for the asserted claims of the '074 patent, engaging in multiple meet and confer discussions with White & Case attorneys in this district, and sending draft stipulations to White & Case attorneys in this district.

12. Additionally, in the ITC First Solar identified activities taking place in this judicial district as allegedly infringing its patents. For example, First Solar's ITC complaint identified importation by VSun as allegedly infringing. The Bill of Lading First Solar attached to its ITC complaint as purportedly demonstrating infringing importation identifies the port of entry as

Oakland, California, which is located in this judicial district.

13. For all these same reasons, venue is proper in this District under 28 U.S.C. § 1391 because First Solar resides in this district, First Solar is subject to the court's personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

**PATENT-IN-SUIT**

14. The '074 patent is entitled "High-efficiency solar cell structures and methods of manufacture" and it issued on September 8, 2015, to TetraSun, Inc. of Saratoga, California. Defendant purports to own the '074 patent. A copy of the '074 patent is attached as Exhibit 1.

15. On June 11, 2025, Defendant, through its outside litigation counsel at the Cravath law firm, sent a letter directed to BYD that alleged infringement of the '074 patent by BYD n-type TOPCon products. This letter expressed First Solar's intention to "pursue enforcement, licensing, and/or other measures to safeguard its TOPCon patent rights" and that it "has been investigating several leading crystalline silicon solar manufacturers for potential infringement of the TOPCon patents." The Cravath law firm indicated it had been retained "to enforce those patents against companies that are using them without permission but refuse to take a license."

16. On February 24, 2026 First Solar filed its complaint in the ITC. In its complaint, First Solar requested "a general exclusion order excluding from entry into the United States of any TOPCon solar cells, and solar modules, solar panels and/or other solar products that incorporate such solar cells." The scope of the requested relief, if enacted, would have blocked BYD from importing its n-type TOPCon solar modules for sale within the United States. After BYD intervened in the ITC investigation, First Solar served a claim chart that it said demonstrated infringement of the asserted claims of the '074 patent by BYD's NLBK-36 solar modules.

17. First Solar also filed district court proceedings against other solar manufacturers asserting the '074 patent, including *First Solar, Inc. v. Trina Solar Co., Ltd. et al*., 1-26-cv-00210 (D. Del.); *First Solar, Inc. v. Canadian Solar Inc. et al*., 1-25-cv-00582 (D. Del.); and *First Solar, Inc. v. JinkoSolar Holding Co., Ltd. et al*., 1-25-cv-00223 (D. Del.). All these cases remain

pending.

18. First Solar recently took steps to dismiss the ITC investigation without prejudice, but noted in a press release that it was " more determined than ever to enforce our IP rights" and that its dismissal of the ITC case "clears the way for our pending suits to move forward and for additional suits we anticipate filing."

19. An actual and justiciable controversy therefore exists under 28 U.S.C. §§ 2201 and 2202 between BYD and the Defendant as to whether BYD is infringing or has infringed the asserted claims of the '074 patent by virtue of BYD's importation and sale of n-type TOPCon solar modules, and whether those claims are valid and enforceable.

**COUNT I – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '074 PATENT**

20. BYD incorporates by reference paragraphs 1-19 above as if fully set forth herein.

21. Defendant claims to own all right, title and interest in the '074 patent.

22. The Accused Products are not manufactured using any method claimed in the '074 patent, at least because BYD does not perform the following method steps in independent claim 1:

a. depositing or growing at least one amorphous interface passivation layer over the substrate;

b. depositing at least one conductive and passivating layer on the at least one interface passivation layer, the at least one conductive and passivating layer comprising a dopant;

c. providing a thermal treatment at a temperature of about 500°C or higher, the thermal treatment crystallizing, at least in part, the at least one conductive and passivating layer and facilitating diffusion of the dopant from the at least one conductive and passivating layer through the at least one interface passivation layer; and

d. providing metallization as electrodes which directly contact the at least one conductive and passivating layer following the thermal treatment thereof,

wherein the dopant diffused through the at least one interface passivation layer provides shortened charge carrier flow paths between the substrate and the electrodes through the at least one conductive and passivating layer and the at least one interface passivation layer.

23. Defendant's assertion of the asserted claims is also barred by the doctrines of disclaimer and prosecution history estoppel. By way of non-limiting example, during prosecution the applicant made clear that its claimed process excludes firing, melting, or otherwise forcing a metal to penetrate through underlying layers of the cell. *See, e.g.,* March 26, 2014 Resp. to Office Action at 9 ("Advantageously, applicant's method allows metallization as electrodes to be provided over the conductive and passivating layer, as claimed in amended claim 1, **without the need for a protective dielectric layer, or the need to create openings or firing holes through multiple layers of the solar cell to permit contact between metal electrodes and the semiconductor substrate**..."); Sep. 23, 2014 Amdt. Accompany RCE at 6 ("Applicants' approach to solar cell formation advantageously **eliminates the need to fire, melt, or otherwise force a metal to penetrate through underlying layers of a solar cell, such as dielectric and/or passivating layers**, to create electrical contacts from conductive contacts to the solar cell substrate. Such approaches to forming conductive contacts may, for example, damage the underlying functional layers of the solar cell, or cause increased carrier recombination near the contact surfaces or at the substrate surface. As explained further below, Applicants' approach advantageously creates charge carrier pathways between conductive contacts and the substrate via the dopant diffusing from the conductive and passivating layer throughout the interface passivation layer, thus allowing metallization to be performed following thermal treatment without the need for a conductive material to penetrate through any underlying layers of the solar cell."); Sep. 23, 2014 Amdt. Accompany RCE at 7 ("Furthermore, Applicants' amended claim 1 recites providing metallization as electrodes over the at least one conductive and passivating layer following the thermal treatment thereof. This aspect of Applicants' claim 1 is also not taught in the applied art. As discussed above, methods of conductive contact or electrode formation in the applied art generally require some form of thermal treatment of a conductive or metal material

that allows the conductive material to penetrate through one or more other layers of the solar cell to make contact with the solar cell substrate. In contrast, Applicants' approach forms conductive paths for charge carriers via the dopant diffused from the conductive and passivating layer throughout the interface passivation layer, thus forming conductive paths via thermal treatment prior to provision of metallization over the conductive and passivating layer. Applicants' invention thus allows for metallization as electrodes to be performed after thermal treatment has been completed."). In this respect, BYD's accused products use methods similar to those the Applicant expressly distinguished, disclaimed, and disavowed during prosecution, and therefore cannot be covered by the asserted claims.

24. Claims 2 through 8 in the '074 patent depend from claim 1. The Accused Products are not manufactured using any method claimed in claims 2 through 8 at least because BYD does not perform the method steps in claim 1.

25. An actual and justiciable controversy has arisen and now exists between BYD and Defendant concerning whether BYD infringes any claim of the '074 patent.

26. A judicial declaration is necessary and appropriate so that BYD may ascertain its rights in view of Defendant's allegations of infringement of the claims of the '074 patent.

27. BYD seeks a judgment declaring that it does not directly or indirectly infringe any claim of the '074 patent, either literally or under the doctrine of equivalents.

## COUNT II – DECLARATORY JUDGMENT OF INVALIDITY OF THE '074 PATENT

28. BYD incorporates by reference paragraphs 1-27 above as if fully set forth herein.

29. The asserted claims of the '074 patent are invalid for failing to meet one or more conditions and requirements for patentability specified in Title 35, United States Code, including at least §§ 102, 103, and/or 112.

30. Regarding 35 U.S.C. §§ 102 and 103, by way of non-limiting example, the reference P. Borden *et al.*, "Polysilicon Tunnel Junctions as Alternates to Diffused Junctions," 23rd European Photovoltaic Solar Energy Conference, Sept. 1-5 2008, Valencia, Spain, 1149-1152 (the "Borden Reference"), was published in September 2008 and reflects Borden's

invention in the United States that was not abandoned, suppressed, or concealed. The Borden Reference qualifies as prior art under at least 35 U.S.C. § 102(a), (b), (f) and (g) (pre-AIA), and the Borden Reference anticipates and renders obvious each asserted claim of the ’074 patent, as shown in the claim chart attached hereto as Exhibit 2.

31. Regarding 35 U.S.C. § 112, by way of non-limiting example, the asserted claims of the ’074 patent recite that “the dopant diffused through the at least one interface passivation layer provides shortened charge carrier flow paths between the substrate and the electrodes through the at least one conductive and passivating layer and the at least one interface passivation layer.” This does not specify the starting or ending point for any such length calculations, what comparison must be done to show the length is “shorter,” or how many paths must be “shortened.” To the extent the claims say the shortening is due to dopant diffusion, a lack of dopant diffusion could be caused by (for example) differing levels of dopant, differing heat treatments, differing dopant types, differing types or thicknesses of intervening layers, or a variety of other potential factors. Without a clear baseline reference, there is no way to tell if a given path has been “shortened,” rendering the claim indefinite. Also, the specification provides no written description of path shortening via dopant diffusion.

32. An actual and justiciable controversy has arisen and now exists between BYD and Defendant concerning whether the asserted claims of the ’074 patent are valid.

33. A judicial declaration is necessary and appropriate so that BYD may ascertain its rights in view of Defendant’s allegations of infringement of the claims of the ’074 patent.

34. BYD therefore seeks a judgment declaring that the asserted claims of the ’074 patent are invalid under 35 U.S.C. §§ 102, 103, and/or 112.

## COUNT III – DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE ’074 PATENT

35. BYD incorporates by reference paragraphs 1-34 above as if fully set forth herein.

### A. Inequitable Conduct

36. The ’074 patent is unenforceable because of inequitable conduct committed during its prosecution before the USPTO. The applicant of U.S. Patent Application No. 13/265,462 (the

"'462 Application")—which led to the '074 patent—intentionally failed to disclose to the United States Patent and Trademark Office ("USPTO") prior art that would have informed the USPTO that the Asserted Patent should not have been granted a Notice of Allowance.

37. The inventors of the '074 Patent (including Olivier Schultz-Wittman), prosecuting attorneys (including Kevin P. Radigan of Heslin Rothenberg Farley & Mesiti P.C.), and the assignee (including TetraSun, Inc.) each owed "a duty of candor and good faith in dealing with the [U.S. Patent] Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability." Manual of Patent Examining Procedure ("MPEP") § 2001(a); 37 C.F.R. § 1.56. The inventors "acknowledge[d] the[ir] duty to disclose all information [they] knew to be material to patentability in accordance with [§ 1.56]" when applying for the '074 Patent, and that duty to disclose applied equally to Kevin P. Radigan and the other prosecuting attorneys at of Heslin Rothenberg Farley & Mesiti P.C. after the inventors appointed them to prosecute the applications of the '074 Patent.

38. Information that is material to patentability includes "any information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent." *Bristol- Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1234 (Fed. Cir. 2003).

39. On information and belief, one or more individuals with a duty of candor and good faith, including Oliver Schultz-Wittman, and patent prosecution counsel Kevin P. Radigan, intentionally withheld material, non-cumulative prior art to the USPTO during prosecution of the '074 Patent, including the Borden Reference.

40. The face of the Borden Reference shows a publication date of September 2008, before the earliest claimed priority date listed on the face of the '074 Patent—April 21, 2009.

41. The Borden Reference "report[ed] use of heavily doped polysilicon combined with a tunnel dielectric to provide an alternate to diffused junctions for silicon solar cells." Borden Reference, Abstract. Borden explained that "[o]n the basis of" the "results" "the path to a high efficiency PE cell structure is clear." Borden Reference, 1151–52.

42. The Borden Reference was not cited by the Applicant for the '074 Patent during

prosecution and is not listed anywhere on the face of the ’074 Patent.

43. According to the ’074 Patent, “FIG 1 is an energy band diagram for an n-type crystalline silicon solar cell with doped polysilicon layers and a passivated surface.” ’074 Patent, 2:40-42. According to the ’074 Patent, solar cells “in accordance with the present invention,” “provide excellent surface passivation,” and Figure 1 is a “corresponding energy band diagram” showing that. Id., 4:4–19. The ’074 Patent states that Figure 1 shows “passivating interface layer 10<10nm,” DOPED p-poly Si OR a-Si(p)/a-Si(i),” and “DOPED n-poly Si OR a-Si(n)/a-Si(i).”

44. Figure 1 of the Borden Reference is identical, and shows “[c]omparison of band structures for doped polysilicon--c-Si(b) cell with a tunnel insulator passivated interface and a-Si(p)–c-Si(n) heterojunction cells.” Just like Figure 1 of the ’074 Patent, Figure 1 of the Borden Reference shows “tunneled insulator passivated interface” <10nm (6-12 Å), “DOPED p-poly Si OR a-Si(p)/a-Si(i),” and “DOPED n-poly Si OR a-Si(n)/a-Si(i).”

**Fig. 1 from the ’074 patent (Ex. 1):**




FIG. 1

**Fig. 1 from the Borden Reference (Ex. 2):**




**Figure 1:** Comparison of band structures for doped polysilicon--c-Si(n) cell with a tunnel insulator passivated interface (red and blue) and a-Si(p)--c-Si(n) heterojunction (black) cells.

45. Because the band structures shown in Figure 1 of the Borden Reference and Figure 1 of the ’074 Patent are identical, the most reasonable inference is that the inventors were aware of the Borden Reference during prosecution of the ’074 patent and copied Figure 1 from the Borden Reference into the specification for the ’074 patent, without disclosing the Borden Reference to the USPTO.

46. On information and belief, Figure 1 of the ’074 Patent was copied by one or more of Oliver Schultz-Wittmann and patent prosecution counsel Kevin P. Radigan from Figure 1 of

the Borden Reference. And, on information and belief, one or more of Oliver Schultz-Wittmann and patent prosecution counsel Kevin P. Radigan withheld the Borden Reference from the USPTO with the intent to deceive. Had the Borden Reference been before the examiner, the examiner would not have been able to distinguish the allowed claims over the prior art.

47. The Borden Reference's high materiality is further corroborated by a more recent ruling in an invalidity proceeding challenging a Chinese counterpart to the '074 patent. There, the Chinese patent authority determined that the Borden Reference invalidates the Chinese counterpart to the '074 patent.

48. Further, in its March 26, 2014 Response to Office Action, the applicant argued for patentability over the prior art by representing to the examiner: "Substantively, claim 1 as amended recites, in part, at least one conductive and passivating layer comprising a dopant deposited on at least one interface passivating layer over a substrate. This feature is itself believed novel." (Applicants Response to Office Action, Application Serial No. 13/265,462 (filed Mar. 26, 2014)).

49. Dr. Schultz-Wittmann knew that representation was false. In an interview for the podcast The Solar Journey Dr. Schultz-Wittmann described "the origins of . . . having a silicon surface having a silicon oxide and a doped poly crystalline silicon compound on top, performing exactly that to reduce carrier recombination yet being conductive," and stated that this "has been around like in the late 70s, so early 80s." The structure Dr. Schultz-Wittmann described on the podcast as originating many decades prior to the filing of the Asserted Patent is the same "conductive and passivating layer" the applicant told the examiner was "believed novel" to distinguish the prior art.

50. The single most reasonable inference from the alleged facts is that material information was withheld, and the novelty representation advanced, with the specific intent to deceive the USPTO in order to secure a patent.

51. The applicant's withholding of material prior art and misrepresentation of inventiveness were motivated by the affirmative benefit of the issuance of the patent. Claim 1 issued only after the applicant amended the claim to include features it represented were absent

from the applied art, including an amorphous interface passivation layer and metallization electrodes directly contacting the conductive and passivating layer. In response to the USPTO rejecting claim 1 as unpatentable, the applicant argued the applied art "fails to disclose depositing a conductive and passivating layer on an interface passivation layer, the conductive and passivating layer comprising a dopant." (Applicants Response to Office Action, Application Serial No. 13/265,462 (filed Sept. 23, 2014); Response to Office Action (Mar. 26, 2014)). The Borden Reference disclosed those features. Withholding a reference that disclosed the very subject matter on which patentability turned, by an inventor who knew of the reference and history in the field, demonstrates that the withholding was deliberate and done so with the intent to deceive.

**B. Ownership**

52. BYD incorporates by reference paragraphs 1-51 above as if fully set forth herein.

53. All asserted claims are unenforceable by First Solar because First Solar is not the correct owner or assignee of the '074 Patent.

54. On information and belief, Mr. Borden and/or other individuals employed by Applied Materials or the Fraunhofer Institute contributed to the conception of the claimed subject matter of the '074 patent, as reflected in the fact that Figure 1 of the Borden Reference (which predates the '074 patent) is identical to Figure 1 of the '074 patent. Therefore either or both of the Fraunhofer Institute and Applied Materials has ownership rights in the '074 Patent, and because First Solar does not possess valid rights to the '074 patent, the patent is unenforceable.

55. Thus, an actual and justiciable controversy has arisen and now exists between BYD and Defendant concerning whether the asserted claims of the '074 patent are unenforceable.

56. A judicial declaration is necessary and appropriate so that BYD may ascertain its rights in view of Defendant's allegations of infringement of the claims of the '074 patent.

57. BYD therefore seeks a judgment declaring that the asserted claims of the '074 patent are unenforceable by First Solar.

**JURY DEMAND**

BYD demands a jury trial on all issues and claims so triable.

**PRAYER FOR RELIEF**

WHEREFORE, BYD hereby prays for judgment as follows:

A. Declare that BYD does not directly or indirectly infringe the asserted claims of the ’074 patent, either literally or under the doctrine of equivalents, and that it is not liable for damages or injunctive relief based on the asserted claims of the ’074 patent;

B. Declare that the asserted claims of the ’074 patent are invalid under 35 U.S.C. §§ 102, 103, and/or 112

C. Declare that the asserted claims of the ’074 patent are unenforceable by First Solar;

D. Declare that judgment be entered in favor of BYD and against Defendant on each of BYD’s claims;

E. Find that this is an exceptional case under 35 U.S.C. § 285;

F. Award BYD its costs and attorneys’ fees in connection with this action; and

G. Award BYD such other and further relief as the Court deems just and proper.

Dated: September 21, 2026

By: */s/ Yar R. Chaikovsky*

Yar R. Chaikovsky (SBN 175421)
yar.chaikovsky@whitecase.com
Philip Ou (SBN 259896)
philip.ou@whitecase.com
Bruce Yen (SBN 277920)
bruce.yen@whitecase.com
Jonathan Lamberson (SBN 239107)
lamberson@whitecase.com
Yolanda (Zhaoqi) Xu (SBN 345049)
yolanda.xu@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Attorneys for Plaintiff
BYD AMERICA LLC